UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALYSSA LEADER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HARVARD UNIVERSITY BOARD OF OVERSEERS, )<br>And PRESIDENT AND FELLOWS OF HARVARD )<br>COLLEGE, )<br>)<br>Defendants. )<br>) | Civil Action No. 16-10254-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                  **March 17, 2017**

**I.     Introduction**

Plaintiff Alyssa Leader ("Leader") has filed this lawsuit against Defendants Harvard University Board of Overseers and the President and Fellows of Harvard College (collectively, "Harvard") alleging violations of Title IX, 20 U.S.C. § 1681, and state law claims of negligence and premises liability.  D. 27.  Harvard now seeks to dismiss Leader's complaint under Fed. R. Civ. P. 12(b)(6), D. 33, and strike certain allegations in the operative complaint, D. 35.  For the reasons stated below, the Court DENIES in part and ALLOWS in part the motion to dismiss and DENIES the motion to strike.

**II.    Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering the sufficiency of the facts, the court "must

1

take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[ ]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).[1]  "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).  At its core, "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

"Under Rule 12(f), a party may move to strike 'from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter.'" Dennison v. LaPointe, No. 06-40100-FDS, 2006 WL 3827516, at *1 (D. Mass. Dec. 21, 2006) (quoting Fed. R. Civ. P. 12(f)).  Although "[m]otions to strike under Rule 12(f) are generally disfavored," U.S. S.E.C. v. Nothern, 400 F. Supp. 2d 362, 364 (D. Mass. 2005), a pleading that violates the principles of Rule 8 may be struck "within the sound discretion of the court," Newman v. Commonwealth of Mass., 115 F.R.D. 341, 343 (D. Mass. 1987) (citation omitted).  In assessing whether a motion to strike should be granted, the Court must bear in mind that such motions are rarely granted absent a showing of prejudice to the moving party. See Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 398 (D.R.I. 1998) (explaining that "[m]ere redundancy is insufficient to support a motion to strike" but that

---

[1] In addition to considering factual allegations in the complaint, the court may consider documents attached as exhibits or incorporated by reference in the complaint. Nollet v. Justices of the Trial Court, 83 F. Supp. 2d 204, 208 (D. Mass. 2000).  Here, Leader's knowledge of the ODR Report is evidenced by her statement that she reviewed a draft of the report. D. 1, ¶ 98. Leader relied upon the Harvard Administrative Board's refusal to allow her to appeal the report's findings as part of her allegation that Harvard's investigatory procedures were inadequate. D. 1. Thus, the ODR Report may properly be considered by this Court in evaluating Harvard's motion to dismiss.

"the movant must demonstrate that prejudice would result if the offending material remained in the pleadings").

### III.   Factual Background

Taking all factual allegations in the amended complaint as true, as required at this stage, this Court considers the following allegations. Between March 2013 and March 2014, Leader, a student at Harvard, maintained a sexual and dating relationship with John Doe 1, who was also a student at Harvard. D. 27 ¶ 63. During their year-long relationship, Leader was subjected to sexual assault and harassment at the hands of John Doe 1. Id. ¶ 65. She first reported the alleged assault and harassment to the Office of Sexual Assault Prevention & Response ("OSAPR") in the spring of 2013. Id. ¶ 76. At nearly all times relevant to this litigation, Leader and John Doe 1 were residents of Cabot House, a dormitory at Harvard. Id. ¶ 68. The only exception to this was during the summer of 2013, at which time John Doe 1 lived at 6 Soldier's Field Park, a different residential building owned and operated by Harvard. Id. Both students worked at the Cabot House café, where Leader was a barista and John Doe 1 was a manager. Id.

During the year the two students were dating, John Doe 1 would often become incensed when Leader declined his sexual advances. Id. ¶ 69. John Doe 1 would slam doors and strike furniture upon Leader's declinations. Id. Leader often acquiesced to John Doe 1's desires in order to prevent these outbursts. Id. Additionally, Leader and John Doe 1 engaged in frequent arguments during which John Doe 1 would raise his voice and suggest that they would fight less if Leader would more frequently consent to sexual intercourse. Id.

In March 2014, the couple broke up. Id. ¶ 71. Several months later, in September 2014, John Doe 1 began dating another female student at Harvard. Id. ¶ 72. Leader approached John Doe 1 during this time and requested that he not treat his new girlfriend the same way he had

treated her. Id. ¶ 72. Leader also informed John Doe 1 during this conversation that the behavior he exhibited during their relationship might have violated Harvard policy. Id. This discussion angered John Doe 1 and he began to harass Leader regularly. Id. ¶¶ 72-73. For example, John Doe 1 would make huffing and puffing sounds that simulated sex when he passed Leader, id. ¶ 73; he would show up when she was working her shift at the Cabot House café and make sexually crude comments, id. ¶ 74; and he would purposely make loud comments in the dining hall when Leader was nearby suggesting that Title IX policies cause even the most trivial actions to be classified as rape, id. ¶ 75.

Leader again reported John Doe 1's behavior to OSAPR in September 2014. Id. ¶ 76. On November 6, 2014, Leader also reported the harassment to her resident dean. Id. ¶ 78. Leader told the resident dean that she felt unsafe and requested that John Doe 1 be transferred to a different dormitory. Id. The resident dean referred Leader to Emily Miller, Harvard's Title IX coordinator. Id. On November 7, 2014, Leader met with Miller and again expressed the anxiety she felt regarding her safety. Id. ¶ 79. She also reiterated her request that John Doe 1 be removed from Cabot House and placed in alternate housing. Id. Miller did nothing in response. Id. On December 15, 2014, Leader once again met with Miller and informed her that John Doe 1's harassment had escalated. Id. ¶ 80. Again, nothing was done. Id.

On February 3, 2015, Leader reported John Doe 1's harassment to the Office for Gender-Based Dispute Resolution ("ODR"), which is responsible for investigating and resolving any complaints made under Harvard's university-wide sexual and gender-based harassment policy. Id. ¶¶ 81-82. ODR officials met with Leader three separate times in March and April of 2015 to investigate her allegations. Id. ¶ 84. During these meetings, Leader informed ODR officials that she was not sleeping at Cabot House out of fear for her safety. Id. She also noted that she was

missing meals and dropping work shifts. Id. Throughout this process, Harvard officials did not propose safety measures Leader could take. Id. ¶ 85. When Leader requested that Miller issue a no-contact order between Leader and John Doe 1, Miller conveyed that a no-contact order was unnecessary since ODR had already commenced a formal investigation and, as a result, "retaliation rules" were in effect, which covered the same conduct as a no-contact order. Id. ¶ 90. Harvard neither informed Leader when it gave notice to John Doe 1 of her complaint against him, nor alerted her when it provided the evidence in support of her complaint to him. Id. ¶¶ 88-89. After John Doe 1 was informed about the investigation, he and his friends would often stare at Leader while she was doing schoolwork, sit on opposite sides of the Cabot House café so Leader would be forced to walk by them as she entered and exited work, and sit on the deck near her entryway into Cabot House. Id. ¶ 91. Despite Leader informing several Harvard officials of the ongoing harassment, nothing was done to help her during this time. Id. ¶ 92.

Harvard did not provide Leader with an overview of her legal rights or options during the investigation. Id. ¶ 94. Through her own research, Leader learned that she could pursue a restraining order against John Doe 1. Id. On April 27, 2015, Leader sought and obtained a restraining order against John Doe 1 in Massachusetts state court. Id. ¶ 96. Harvard removed John Doe 1 from Cabot House and transferred him to a different dormitory once the restraining order issued. Id. After obtaining the restraining order, Leader also learned that the "retaliation rules" that were in effect as a result of the ODR investigation were not the same as a no-contact order. Id. ¶ 99. Indeed, when a no-contact order is in place, any violation of the order is referred to Harvard's Administrative Board ("Ad Board"), Harvard's sanctioning body for disciplinary claims, rather than ODR. Id. Having had a no-contact order in place would have allowed the Ad Board to respond more expediently to John Doe 1's continued presence at her workplace and

outside her dormitory throughout the investigative process, thus significantly alleviating her constant fear and anxiety. Id.

Leader and John Doe 1 graduated from Harvard in May 2015. Id. ¶ 100. On July 17, 2015, ODR released its finding that John Doe 1 was "[n]ot [r]esponsible" for all claims of rape, assault, abuse, harassment, and retaliation. Id. ¶ 104. Leader appealed the decision but was unsuccessful. Id. ODR transmitted the results of its investigation to the Ad Board. Id. Both Leader and John Doe 1 were given the opportunity to provide a statement to accompany ODR's investigatory results for the Ad Board's review. Id. On August 18, 2015, the Ad Board voted to "[s]cratch" Leader's complaint, concluding "nothing wrong had happened and there were no grounds for punishment." Id. All references to the complaint against John Doe 1 were removed from his Harvard record. Id. Leader's request for reconsideration of this decision was denied. Id.

### IV.     Procedural History

Leader has filed an amended complaint in this action. D. 27. Harvard has now filed a motion to dismiss that pleading for failure to state a claim. D. 33. On the same date, Harvard also moved to strike immaterial and prejudicial allegations from Leader's first amended complaint. D. 35. The Court heard the parties on the pending motions and took these matters under advisement.

### V.      Discussion

#### A.      Title IX—Count I

Leader asserts a claim for a violation of Title IX based on Harvard's actions following her alleged sexual assault and harassment. D. 27, ¶ 114-18. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although "Title IX's express means of enforcement

[is] by administrative agencies," Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 288 (1998), the Supreme Court has held that the statute implies a private right of action entitling plaintiffs to compensatory damages for sexual harassment under certain limited circumstances, Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 639-40 (1999). However, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." Gebser, 524 U.S. at 290. The First Circuit has elaborated on this, explaining that to state a claim under Title IX for "student-on-student sexual harassment," a plaintiff must show: "(1) that he or she was subject to 'severe, pervasive, and objectively offensive' sexual harassment by a school peer, . . . (2) that the harassment caused the plaintiff to be deprived of educational opportunities or benefits . . . (3) [and that the funding recipient] knew of the harassment, (4) in its programs or activities and (5) it was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." Porto v. Town of Tewksbury, 488 F.3d 67, 72-73 (1st Cir. 2007).

Harvard argues that Leader's Title IX claim must be dismissed because she fails to allege that Harvard acted with "deliberate indifference," a necessary element to a private cause of action under Title IX. D. 34 at 10. In assessing this argument, the Court must bear in mind that the deliberate indifference standard has been purposely set high to "eliminate any 'risk that the [Title IX funding] recipient would be liable in damages not for its own official decision but instead for [a third party's] independent actions.'" Davis, 526 U.S. at 643 (quoting Gebser, 524 U.S. at 290-91). Indeed "[d]eliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. A recipient cannot

be directly liable for its indifference where it lacks the authority to take remedial action." Id. at 644.

Harvard contends that its response to Leader's reports of sexual harassment demonstrates that it did not act with deliberate indifference. D. 34 at 10. Harvard argues that it immediately launched an investigation into Leader's allegations and interviewed her, John Doe 1, and numerous other individuals in an attempt to determine if Leader had been sexually assaulted. Id. Moreover, Leader was provided the opportunity to meet with Harvard's Title IX coordinator on multiple occasions and was given academic advice from her resident dean regarding how to prevent the incident from negatively affecting her studies. Id. at 6, 10. Leader was also told that she could move to an alternate dormitory to minimize her contact with John Doe 1. Id. at 10. According to Harvard, Leader's complaint amounts to discontent with the particular way Harvard responded to her sexual assault allegations, but she has not adequately pled that Harvard acted with deliberate indifference as required for a Title IX claim. Id.

As Harvard stresses, it is true that Title IX "does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by [complainant(s)]." Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 174 (1st Cir. 2007), rev'd on other grounds, 555 U.S. 246 (2009). This, Harvard continues, is in line with the Supreme Court's directive that the deliberate indifference standard should not necessarily be found to have been met simply because a school fails to respond to a complainant's Title IX allegations in the precise way the complainant demands. Davis, 526 U.S. at 648 (recognizing that "victims of peer harassment [do not] have a Title IX right to make particular remedial demands"). That said, this precedent does not appear to suggest that as long as a university acts in some way in response to reported sexual harassment, it has satisfied its burden under the deliberate indifference standard.

In fact, for one example, the Sixth Circuit rejected such an argument, holding that "[i]f this Court were to accept [the school's] argument, a school [] could satisfy its obligation where a student has been raped by merely investigating and absolutely nothing more. Such minimalist response is not within the contemplation of a reasonable response." Vance v. Spencer Cty Pub. Sch. Dist., 231 F.3d 253, 260 (6th Cir. 2000).

At this motion to dismiss stage, the Court does not conclude that Leader's Title IX claim fails simply because Harvard responded to her sexual assault report in some manner. Harvard's response, as alleged, does not unequivocally render the Title IX claim facially implausible. Indeed, the First Circuit has held that while an institution that "takes timely and reasonable measures to end the harassment . . . is not liable under Title IX for prior harassment," the institution may still be liable under Title IX if those measures fail to solve the problem. Wills v. Brown Univ., 184 F.3d 20, 26 (1st Cir. 1999). Indeed, "if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability." Id.; see Vance, 231 F.3d at 261 (concluding that "[w]here a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances"). Here, Leader alleges that she informed Harvard officials numerous times during the ODR investigation that she continued to feel threatened by John Doe 1's retaliatory actions. D. 27, ¶ 85. Months after she first reported John Doe 1's alleged sexual harassment to Harvard officials, she still felt anxiety great enough to request a no-contact order, which she was mistakenly dissuaded from pursuing due to misinformation allegedly provided by a Harvard official. Id. ¶¶ 90, 99. ODR investigators were informed by Leader during her several interviews that that she was dropping work shifts and missing meals, as a result of continued harassment toward her by John Doe 1. Id. ¶ 84. Thus, even assuming *arguendo* that

9

Harvard may have met its initial Title IX obligation to respond to Leader's complaints of sexual harassment, Leader has sufficiently alleged that Harvard's subsequent actions failed to stop the post-reporting harassment. Viewing these allegations in the light most favorable to Leader, the Court declines to dismiss Count I, the Title IX claim.[2]

### B. Negligence—Count II

To prevail on a negligence claim under Massachusetts law, "a plaintiff must show by a preponderance of the evidence[:] (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." Heinrich v. Sweet, 308 F.3d 48, 62-63 (1st Cir. 2002) (internal quotation marks and citation omitted). "[A]bsent an independent duty imposed by law," a plaintiff cannot pursue a tort claim against a defendant. Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278, 289 (D. Mass. 1987). While it is generally true that "a person 'do[es] not owe others a duty to take action to rescue or protect them from conditions [h]e ha[s] not created,'" Doe v. Emerson Coll., 153 F. Supp. 3d 506, 514 (D. Mass. 2015) (alterations in original) (quoting Cremins v. Clancy, 415 Mass. 289, 296 (1993)), the

---

[2] Harvard provides numerous examples of cases where a school's response to a Title IX harassment report was deemed adequate in light of the deliberate indifference standard, but the Court notes that nearly all of those cases were decided at the summary judgment stage. See, e.g., Roe v. St. Louis Univ., 746 F.3d 874, 883 (8th Cir. 2014) (finding, at summary judgment, no deliberate indifference on the part of the university where the student was provided with information about the grievance process and referred to a sexual assault counselor, and where the university opened an investigation after the complaint was filed); Doe v. Galster, 768 F.3d 611, 619-22 (7th Cir. 2014) (finding, at summary judgment, no deliberate indifference on the part of the school district where the school district provided counselors to discuss the harassment, took measures to reduce contact between the student and her alleged harasser, and investigated the student's allegations); Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist., 647 F.3d 156, 167-70 (5th Cir. 2011) (finding, at summary judgment, no deliberate indifference on the part of the school district where school officials investigated the student's allegations and offered to reduce—but not eliminate—contact between her and her alleged harasser); Frederick v. Simpson Coll., 149 F. Supp. 2d 826, 840 (S.D. Iowa 2001) (finding, at summary judgment, no deliberate indifference on the part of the college where the college "conducted a prompt investigation" resulting in a "three page report").

Restatement (Second) of Torts recognizes an exception to this rule under certain circumstances. These duties "arise out of special relations between the parties, which create a special responsibility, and take the case out of the general rule." RESTATEMENT (SECOND) OF TORTS § 314A cmt. b (AM. LAW INST. 1965).

In this case, Harvard concedes that it had a duty of care to Leader as a result of the university-student relationship. D. 34 at 15 (stating that "[a]s a general matter, Massachusetts colleges owe a duty to student[s] housed in a facility on campus" (second alteration in original) (internal quotation marks and citation omitted)). Although Harvard recognizes that "[t]his duty is not unlimited" because it "extends only to those acts that are reasonably foreseeable," id. (internal quotation marks omitted) (quoting Kavanagh v. Trs. of Boston Univ., 440 Mass. 195, 203 (2003)), Harvard does not dispute that the legal duty exists, id.; see Hrg. Tr. at 12 (admitting that "it's important to note that Harvard is not contesting the idea that it as an institution . . . owes a reasonable duty of care to its students"). Because the case law is not settled on the scope of such duty and, given the motion to dismiss stage, the Court will accept Harvard's concession both in its papers and at oral argument as to the first element of the negligence tort.

Assuming such duty, then, Leader's negligence claim centers on Harvard's response to her reporting of the alleged sexual assault and whether it failed to prevent John Doe's ongoing harassment of her from that point forward. D. 39 at 20-25. Leader makes clear that the issue is not whether Harvard had a "duty to prevent Doe's rapes of Ms. Leader." Id. at 20. As such, the Court's sole inquiry here is whether Harvard was negligent in its response to Leader's reports of harassment. Leader claims that after she reported the alleged assault, the harassment by John Doe escalated. D. 27, ¶ 80. Leader reported this ongoing retaliatory conduct several times to ODR investigators, yet little was allegedly done by Harvard. Id. ¶ 84. Although Leader was given the

option of moving to another dorm, she alleges that it would have been fruitless to do so because her place of employment was in Cabot House and she would inevitably see John Doe during her work shifts there. Id. ¶ 93. In other words, moving John Doe would have caused contact between the alleged victim and the alleged perpetrator to dissipate significantly, while moving Leader would not have had as great of an effect. Id. Whether Harvard's response was negligent is not for the Court to decide at this stage, but for a factfinder to decide upon a fully developed record. Indeed, there appears to be a factual disagreement on this issue. Furthermore, although Harvard argues that Leader has not plausibly alleged that Harvard's response proximately caused her injuries, D. 34 at 18, the Court concludes that she has sufficiently done so to survive a motion to dismiss. See Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 44 (2009) (noting that "causation is generally left to a jury to decide"). Accordingly, Harvard's motion to dismiss as to Count II for negligence is DENIED.

### C. Premises Liability—Count III

Leader also asserts a claim against Harvard for premises liability. D. 27, ¶ 28-29. Premises liability is a theory of negligence whereby "a landowner must exercise due care to keep its premises in a reasonably safe condition in view of all the circumstances, including the likelihood of injuries to others, the seriousness of the injury, and the burden of avoiding the risk." Murgo v. Home Depot USA, Inc., 190 F. Supp. 2d 248, 250 (D. Mass. 2002) (internal quotation marks and citation omitted). Harvard argues that "[t]he *sine qua non* of premises liability is . . . an allegation that an 'unsafe condition' of the *premises* caused or increased the likelihood of harm." D. 34 at 20 (alterations in original). As such, premises liability attaches when "physical harm [is] caused to . . . invitees by a condition on the land." Sarkisian v. Concept Rests., Inc., 471 Mass. 679, 682 (2015). Here, Harvard contends that Leader has shown no connection between the physical

premises of the Cabot House dormitory and her alleged injury. D. 34 at 20. Harvard also correctly points out that premises liability is not a separate cause of action in and of itself. Rather, premises liability is a particular theory of negligence liability. D. 34 at 19. Moreover, Leader fails to address this argument in her opposition to Harvard's motion to dismiss. D. 39. As Harvard notes in its reply brief, Leader's abandonment of the claim amounts to waiver of the claim. D. 43-1 at 14. The Court agrees. See Perkins v. City of Attleboro, 969 F. Supp. 2d 158, 177 (D. Mass. 2013) (dismissing a count plaintiff failed to address in his opposition to the motion to dismiss) (citing Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (recognizing that "[i]t should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument")); Tian v. Aspen Tech., Inc., 53 F. Supp. 3d 345, 368 n.8 (D. Mass. 2014). Moreover, given clarification by counsel at the motion hearing, the Court understands Leader not to be pursuing a theory of premises liability separate and apart from its negligence claim. Hrg. Tr. at 29. Accordingly, Count III is DISMISSED.

### D. Motion to Strike

Harvard asks this Court to strike paragraphs 7-39, 46, 105, 107, 117, 122 and 130 of the complaint, which discuss a 2011 "Dear Colleague Letter" ("DCL") issued by the Department of Education's Office of Civil Rights ("OCR") and a 2014 document called Questions and Answers on Title IX and Sexual Violence ("Questions and Answers"), also distributed by OCR. D. 35. Both publications are guidance documents outlining various means of complying with the Department of Education's Title IX requirements. D. 27, ¶¶ 10, 21. Harvard contends that any allegations relating to these documents are immaterial and misleading given that they "do not have any impact on the standard of care owed by an educational institution in a private lawsuit." D. 36 at 6. "Under Rule 12(f), a party may move to strike from any pleading any . . . redundant,

immaterial, impertinent, or scandalous matter." Dennison, 2006 WL 3827516 at *1 (internal quotation marks and citation omitted). "Immaterial matter" has been defined as "that which has no relationship to the cause of action pled." See, e.g., Burke v. Chicago Sch. Reform Bd. of Trs., 169 F. Supp. 2d 843, 846 (N.D. Ill. 2001) (internal quotation mark and citation omitted). The presence of immaterial allegations in a complaint can rise to the level of prejudice when "the matter complained of has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party." Anderson v. Bd. of Educ. of City of Chicago, 169 F. Supp. 2d 864, 868 (N.D. Ill. 2001).

In Gebser, the Supreme Court held that "failure to comply with [Department of Education] regulations . . . does not establish the requisite actual notice and deliberate indifference" required to adequately establish a private right of action under Title IX. 524 U.S. at 291-92. The Court spurned the idea that "the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements." Id. at 292. As such, courts have recognized that "[w]hat funding recipients' responsibilities are under Title IX and what they can be held liable for in a private cause of action for damages, however, are not one and the same." Doe v. Bibb Cty. Sch. Dist., 126 F. Supp. 3d 1366, 1377 (M.D.Ga. 2015); see Karasek v. Regents of the Univ. of Cal., No. 15-cv-03717-WHO, 2016 WL 4036104, at *11 (N.D. Cal. July 28, 2016) (concluding that "[f]ailure to adhere to the DCL may be bad policy, but standing alone it does not constitute deliberate indifference"). As one district court has recognized, "[t]here is no private right of action to recover damages under Title IX for violations of [the Department of Education's] administrative requirements, much less the provisions of the [Dear Colleague Letter] and [Questions and Answers], which are agency guidance documents." Moore v. Regents of the Univ. of Cal., 15-cv-05779-RS, 2016 WL 2961984, at *5 (N.D. Cal. May 23, 2016).

Nonetheless, Leader's complaint asserts various claims against Harvard and relies on the DCL and Questions and Answers as support for those claims. See, e.g., D. 27, ¶ 117 (alleging that "Defendant acted with deliberate indifference in deviating significantly from the standard of care outlined by the DOE in the Dear Colleague Letter of 2011, Questions and Answers from 2014, and Defendant's own policies"). The Court's focus, however, must be on the prejudicial nature of keeping references to the DCL in the complaint at this point, not whether it is merely confusing. At least one district court has stricken reliance in a complaint on Department of Education regulations. See Doe v. Brimfield Grade Sch., 552 F. Supp. 2d 816, 825-26 (C.D. Ill. 2008) (stating that "[a]lthough the Court cannot conclude at this stage that these paragraphs are completely immaterial, the Court does believe they are confusing and prejudicial since Count I cannot be based on the regulations under Gebser" and so "the Court will recommend these paragraphs be stricken"). But the Brimfield court was not clear as to how exactly the inclusion of those regulations in the complaint was prejudicial to the defendant. At the motion hearing, Harvard's counsel suggested that references to the DCL and Questions and Answers must be stricken because their continued inclusion in the complaint might inappropriately expand the scope of discovery. Hr. Tr. at 18. But the Court does not necessarily see how discovery might be expanded by their simple inclusion in the complaint. While the Court agrees that Leader may not rest her theory of liability upon Harvard's failure to abide by those guidance documents, such documents may at least inform the reasonableness of choices made by Harvard in responding to Leader's complaints. That is, the very high threshold for granting a motion to strike has not been met. Accordingly, the motion to strike paragraphs 7-39, 46, 105, 107, 117, 122 and 130 of the complaint is DENIED.

Harvard also seeks to have paragraphs 40-45 and 47-49 of the complaint stricken. D. 35, at 2. Those paragraphs discuss an investigation conducted by OCR regarding Harvard Law

School's compliance with Title IX. D. 27, ¶ 40-45, 47-49. According to the complaint, Harvard indicated to OCR that all policies adopted by Harvard Law School in response to its OCR investigation were subsequently adopted university-wide and applied to all Harvard schools. Id. ¶ 45. The Court does not see how these allegations are immaterial to Leader's claims against Harvard. For example, if it turns out that Harvard failed to follow its own sexual assault policies, this might lend support to Leader's claim that Harvard was deliberately indifferent. Accordingly, Harvard's request to strike paragraphs 40-45 and 47-49 of the complaint is DENIED.

**VI.     Conclusion**

For the foregoing reasons, the Court GRANTS Harvard's motion to dismiss the premises liability claim (Count III), D. 33, and DENIES it as to the Title IX (Count I) and negligence (Count II) claims. Id. The Court also DENIES Harvard's motion to strike, D. 35.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge